Glynda Kay ADAMS, Appellee,

v.

Charles Robert UNTERKIRCHER, Wanna Maxine Haydon, Roberta Ann Irby, Nelda Marie Phelps, Freda Colleen Wilson, and Paul Haydon and Maxine, Appellants.

No. 61600.

Supreme Court of Oklahoma.

Nov. 25, 1985.

As Corrected April 7, 1986.

Albert W. Murry, Oklahoma City, for appellants.

Lawrence W. Parish, Okemah, for appellee.

KAUGER, Justice.

The questions presented are whether the trial court abused its discretion when, in a partition action, it granted attorney fees figured on a percentage of the sale price of the land instead of computing the fees based on an hourly rate; and whether the failure to stay or supersede the judgment waived the appellants' right to appeal after their lawyer cashed the voucher issued by the county clerk to satisfy court-awarded attorney fees. We find that the trial court did not abuse its discretion; and that although failure to post a supersedeas bond or to stay the judgment did not affect the right to appeal, acceptance of the benefits of the judgment did.

On April 24, 1984, Robert Unterkircher died testate owning several tracts of real estate in Okfuskee County, Oklahoma, which he had devised to his six children. His heirs were unable to agree on the administration of the estate, and while probate proceedings were pending, two of the children, Glynda Kay Adams (appellee) and Freda Colleen Wilson, hired Lawrence W. Parish to file an action to partition the surface of the land and to recover rents and profits. The other children, Charles Robert Unterkircher, Wanna Maxine Hayden, Roberta Ann Irby, and Nelda Marie Phelps, (appellants) employed Albert W. Murry to represent their interests, and to probate the decedent's estate. In accordance with proper statutory procedure,[1] commissioners were appointed, the lands were appraised, and were ultimately sold at sheriff's sale on December 14, 1983 for $241,000.00.[2]

On December 20, 1983, the appellee's motion to recover rents and profits, to tax costs, and to distribute funds was heard. At the hearing, Parish, the lawyer who brought the partition action, introduced itemized evidence of his expenses; testified, based on his records, that he had spent 99.3 billable hours on the case at an hourly rate of $100 per hour; and further testified that the customary fee in the com-

1. See 12 O.S.1981 §§ 1506, 1509, 1513.

2. Both parties state in their briefs that the property was sold for $241,500.00. However the record indicates, particularly the sheriff's return and order confirming sheriff's sale, that the sales price was $241,000.00. On appeal, the Supreme Court is bound by the record. McGhee v. McAllister, 474 P.2d 940–41 (Okla. 1970).

munity was 10% of the sale price. He explained to the court that the case was difficult because of the unavailability of abstracts and the failure of the heirs to cooperate. Dane A. Seran, an Okfuskee County practitioner since 1938, testified for appellee that 10% of the sale price was a reasonable fee based upon the time spent, the difficulty of the partition, and the fee customarily charged in the county for similar legal services. Seran's testimony was challenged by the estate's expert witness, Jan M. Masters, who admitted that this otherwise simple action was complicated by the simultaneous probate and partition proceedings. Notwithstanding the acknowledged difficulty, Masters' opinion was that a reasonable fee was approximately $7,500–$10,000. Murry then testified that, on behalf of his clients, he had spent 35 hours on the case.

The trial court, pursuant to 12 O.S. 1981 § 1515,[3] taxed the costs, attorney fees, and accrued expenses and apportioned them between the parties. It deducted costs and expenses from the sales price and divided 10% of the remainder between the two attorneys—80% for Parish, 20% for Murry. Parish received $19,215.48 in attorney fees and $707.27 for reimbursed costs. Murry was awarded an attorney fee of $4,803.37. Each lawyer collected and cashed the county clerk's vouchers which were issued in payment of their fees. On January 11, 1984, Murry lodged an appeal asserting that the award of attorney fees was unreasonable, and alleging that the trial court had used only one criterion in assessing the fees in the case, that of the custom in the community, rather than applying the pano-

ply of precepts required by *State ex rel. Burk v. City of Oklahoma City*, 598 P.2d 659, 661 (Okla.1979) and *Oliver's Sports Center v. Nat'l Standard Insurance Co.*, 615 P.2d 291, 295 (Okla.1980). The cause was heard on the accelerated docket of the Court of Appeals which affirmed the award of $707.27 costs, and after finding that the fees violated the *Burk* mandate set attorney fees of $9,930.00 for Parish and $3,500.00 for Murry.

On certiorari, Parish contends that the Court of Appeals did not consider the issues of whether Murry's acceptance of the fruits of the judgment and failure to supersede the judgment waived the right of appeal; that the Court of Appeals exercised the wrong standard of review in reducing the fee; and that the application solely of an hourly rate to compute the fee ignored the guidelines established by this Court in *Burk* and *Oliver*.[4] Murry counters this by arguing that he cashed the check as an accommodation to the accounting procedures of the court clerk, and that because the fees were in the possession of members of the bar who knew that the funds might need to be redeposited with the court clerk, there was no need to post a supersedeas bond.

I

**A PARTY MAY NOT REPUDIATE A JUDGMENT WHILE CONCURRENTLY ACCEPTING ITS BENEFITS**

■ The appellees rely on 12 O.S.1981 § 968[5] for the principle that failure to file

3. Title 12 O.S.1981 § 1515 provides:
 "The court making partition shall tax the costs, *attorney's fees* and expenses which may accrue in the action, and apportion the same among the parties, according to their respective interests, and may award execution therefor, as in other cases." (Emphasis supplied)

4. On certiorari, the appellee asserts that what really violated *Burk*, as well as other cases, was that the appellants' attorney did not turn in proper time sheets but merely relied on testimony that he put in 35 hours on the case. However, as appellant's point out in the certiorari answer, this complaint was waived because it

was not raised until the appellee petitioned for rehearing in the Court of Appeals.

5. The appellee relies on 12 O.S.1981 § 968, which provides in pertinent part:
 "No proceeding to reverse, vacate or modify any judgment or final order rendered in the district court ... shall operate to stay execution, unless the clerk of the court in which such judgment or final order shall have been rendered, shall take a written undertaking ... First. When the judgment or final order sought to be reversed directs the payment of money, the written undertaking shall be in

a written undertaking waives the right to appeal. Although posting of a supersedeas bond stays execution of judgment, it is neither a prerequisite nor a jurisdictional requirement to an appeal.[6] Posting a bond is not necessary before an appeal may be lodged concerning the validity of attorney fees.

■ Generally, however, litigants who voluntarily accept the fruits of a judgment cannot bring an appeal to reverse it[7] because acceptance of the benefits of a part of the judgment favorable to an appellant waives the right to appeal its detrimental parts.[8] The teaching of *Bras v. Gibson*, 529 P.2d 982–984 (Okla.1974) is illuminating in this regard. In *Bras*, a partner who disagreed with the method of sale of partnership assets in a dissolution proceeding, cashed a voucher for his share of the proceeds. However, he endorsed on the voucher a protest alleging that the check was being cashed under duress because the sale and distribution were invalid. His appeal was dismissed because the Court found that even the express reservation in the endorsement could not preserve the right to appeal.[9]

■ *Elliott v. Orton*, 69 Okla. 233, 171 P. 1110–12 (1918) is also illustrative of the waiver principle involved here. After accepting, on his client's behalf, disbursement of funds following a foreclosure sale, the lawyer tried to impress an attorney's lien on the foreclosed property. The court found that his acceptance of the award in favor of his client was an implied ratification of the judgment which barred his inconsistent attempt to appeal the denial of his attorney's lien. Similarly, one cannot cash a voucher and reap the benefits of the judgment while simultaneously seeking its reversal. Such acts are fatally inconsistent with proper appellate procedure.

## II

### THE TRIAL COURT'S AWARD OF ATTORNEY FEES WAS NOT ABUSE OF DISCRETION

■ Normally, attorney fees cannot be recovered unless they are imposed by statute or by contract. Attorney fees in partition actions are authorized by 12 O.S.1981 § 1515.[10] These fees are determined by the sound legal discretion of the district court,[11] and are awarded from the proceeds of the sale of the property[12] to compensate lawyers who render services for, or on behalf of, the estate, or who further the interests of the parties and other landowners.[13]

---

double the amount of the judgment or order...."

6. *Armstrong v. Trustees of Hamilton Investment Trust*, 667 P.2d 985, 988 (Okla.1983); *Nicholson v. State*, 132 Okla. 298, 270 P. 567, 569 (1928).

7. *United Engines, Inc. v. McConnell Construction, Inc.*, 641 P.2d 1101, 1105 (Okla.1981); *Marshall v. Marshall*, 364 P.2d 891, 895 (Okla.1961).

8. *Tara Oil Co. v. Kennedy & Mitchell, Inc.*, 622 P.2d 1076–77 (Okla.1981).

9. The Court in *Bras v. Gibson*, 529 P.2d 982–84 (Okla.1974) stated:
"Bras needed only to appeal the trial court's actions to protect his interest. His act in cashing the voucher was voluntary and for his benefit. That act was not done in defense of and to protect his rights. As to the trial court's orders, Bras could do nothing more than object and appeal. As to the voucher, Bras could accept or refuse. This was his choice.

Bras argues the language in the endorsement saves his appeal. We do not agree. He did two inconsistent acts. He accepted the fruits of the judgment, but also sought to repudiate the judgment. Bras would accept the benefits accruing to him under the judgment but would deny the rights flowing to his adversary under the judgment. He cannot 'have his cake eat it too.' He cannot save his cake by protesting the flavor and at the same time eating it. This would not be fair or just."

10. See note 3, supra.

11. *In re Parr's Estate*, 287 P.2d 906, 908 (Okla. 1955).

12. *Clement v. Ferguson*, 287 P.2d 207, 213–14 (Okla.1955).

13. *Weaver v. Laub*, 574 P.2d 609, 614 (Okla. 1978); *In Re Schwint's Estate*, 183 Okla. 439, 83 P.2d 161, 163 (1938).

 The Court of Appeals found that the trial court erred because it failed to apply the standards promulgated in *Burk v. City of Okla. City*, 598 P.2d 659, 661 (Okla.1979). We do not agree. According to *Burk*, attorneys must present detailed time records, and offer evidence pertaining to the criteria set out in the Code of Professional Responsibility, 5 O.S.Supp.1983 Ch. 1, App. 3, DR 2–107.[14] Recently, we considered a similar question on certiorari in *Sneed v. Sneed*, 681 P.2d 754, 756 (Okla. 1984), a personal injury case, in which the Court of Appeals affirmed the trial court's denial of contingent fees. In reversing, we held that a simple mathematical formula of the hourly rate times the number of hours spent cannot be the single factor used in fee computation. Exclusive imposition of an hourly rate ignores the required analysis of the several interacting factors mandated by *Burk, Oliver*, and *Sneed*. The time and energy expended in the performance of client services are essential elements which must be considered in setting reasonable fees—but, if time is the singular calculation, inexperience, inefficiency, and incompetence may be rewarded while skillful and expeditious disposition of litigation is penalized unfairly.[15]

 The trial court heard testimony regarding: the difficulty of the case; the skill required; the title searches; the problems posed by simultaneous probate and partition proceedings; the uncooperative heirs; the benefit to the other heirs; and the fee customarily charged in the county for similar legal services.[16] The lawyer representing the majority of the heirs asserted that the hours worked times the hourly rate was the most reasonably appropriate method to determine fees. Opposing counsel testified that the reasonable rate was 10% of the sale price. The opinion testimony offered by expert witnesses relating to attorney fees was conflicting and in any event, does not bind the trial court.[17] The reasonableness of a fee rests in its sound discretion, and in the absence of an abuse of discretion, such awards will not be disturbed on appeal. There is ample evidence supporting the fees awarded by the trial court under the guidelines of *Burke* and its progeny—the distribution of the equivalent of 10% of the sales price between the lawyers based on their individual contribution was not unreasonable.

**THE OPINION OF THE COURT OF APPEALS IS VACATED, AND THE JUDGMENT OF THE TRIAL COURT IS AFFIRMED.**

SIMMS, C.J., LAVENDER, HARGRAVE, ALMA WILSON and SUMMERS, JJ., and BRETT, S.J., concur.

HODGES and OPALA, JJ., concur Part I, no vote Part II.

DOOLIN, V.C.J., disqualified.

14. The standards of 5 O.S.Supp.1983 Ch.1, App.3, DR 2–107 which have been incorporated by *Burk* and *Oliver* provide:
"1. Time and labor required.
2. The novelty and difficulty of the questions.
3. The skill requisite to perform the legal service properly.
4. The preclusion of other employment by the attorney due to acceptance of the case.
5. The customary fee.
6. Whether the fee is fixed or contingent.
7. Time limitations imposed by the client or the circumstances.
8. The amount involved and the results obtained.
9. The experience, reputation and ability of the attorneys.
10. The 'undesirability' of the case. (i.e. risk of non-recovery)
11. The nature and length of the professional relationship with the client.
12. Awards in similar cases."

15. See *Sneed v. Sneed*, 681 P.2d 754, 756 (Okla. 1984); *Oliver's Sports Center v. Nat'l Standard Ins. Co.*, 615 P.2d 291, 295 (Okla.1980); *Burk v. City of Okla. City*, 598 P.2d 659, 661 (Okla.1979).

16. Testimony reflected a recent attorney fee award of 15%.

17. *Matter of Estate of Bartlett*, 680 P.2d 369, 380 (Okla.1984); *Hester v. Hester*, 663 P.2d 727, 729 (Okla.1983); *Security Nat. Bank of Enid v. Bonnett*, 623 P.2d 1061, 1064 (Okla.1981); See Annot., "Allowance and Apportionment of Counsel Fees in Partition Action or Suit", 94 A.L.R.2d 571, 597 (1964).